IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY,     )
KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT,   )
EUGENE GEORGE, PAUL SONGER, WILLIAM            )
MCCONNELL, CHARLES VELARDO, MATTHEW            )
AQUILINE, GREGORY R. HESS, MICHAEL             )
SCHMERBECK, VINCENT DELAZZERO,                 )
and BENJAMIN CAPP,                             )
as Trustees of, and on behalf of, the          )
BRICKLAYERS & TROWEL TRADES INTERNATIONAL      )
PENSION FUND,                                  )
    620 F Street, N.W.                        )
    Washington, DC 20004                      )
    (202) 783-3788,                           )
                                               )
and,                                           )
                                               )
JIM ALLEN, MATTHEW AQUILINE, LON BEST, JAMES   )
BOLAND, TED CHAMP, RAYMOND CHAPMAN,            )
VINCENT DELAZZERO, BRUCE DEXTER, JOHN          )
FLYNN, EUGENE GEORGE, GREGORY HESS, FRED       )
KINATEDER, DAN KWIATKOWSKI, KEN LAMBERT,       )
SANTO LANZAFAME, DICK LAUBER, WILLIAM          )
MCCONNELL, EDWARD NAVARRO, GERALD              )
O'MALLEY, JOHN PHILLIPS, CHARLES RASO, MARK    )
ROSE, KEVIN RYAN, GERARD SCARANO, MICHAEL      )
SCHMERBECK, PAUL SONGER, JOSEPH SPERANZA,      )
and FRED VAUTOUR                               )
as Trustees of, and on behalf of, the          )
INTERNATIONAL MASONRY INSTITUTE,               )
    620 F Street, N.W.                        )
    Washington, DC 20004                      )
    (202) 783-3788,                           )
                                               )
                Plaintiffs,     )     Civil Action No.
                                               )

2285987



)
)
)
)
)
)
)
)
)

v.

ARCHITECTURAL RESTORATIONS AND
WATERPROOFING, INC.,
   315 Sweet Hollow Road
   Milford, NJ 08848

           Defendant.

## COMPLAINT

     Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

### CAUSE OF ACTION
### Jurisdiction and Venue

     1.  This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF and IMI, and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145.  Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court.

     2.  The IPF and IMI are administered in the District of Columbia.  Venue for the claims asserted by the IPF and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2)  Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or

2

may be found, and process may be served in any other district where a defendant resides or may be found.

**Parties**

3.　　Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, William McConnell, Charles Velardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Benjamin Capp, are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IPF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.　　The IPF is also authorized to effect collections on behalf of the IMI, pursuant to a written Assignment of Claims and the Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers ("Collection Procedures").

5.　　Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phllips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI. The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

2285987

6.      Defendant, Architectural Restorations and Waterproofing, Inc. ("Architectural Restorations") is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of New Jersey.

7.      Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

**Violation Charged**

8.      Architectural Restorations acting through its authorized agents or officers, executed a collective bargaining agreement with the Union.    This collective bargaining agreement is annexed hereto as Exhibit A and hereinafter referred to as the "Agreement."

9.      Pursuant to the Agreement, Defendant agreed to make certain payments to the IPF and IMI on behalf of covered employees of Defendant.

10.     Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

11.     An examination of Defendant's books and records ("audit") performed by the independent accounting firm of Calibre CPA Group PLLC covering the time period January 2001 through December 2003 revealed that Defendant failed to properly submit required reports and contribution payments for work performed during this time period.

12.     The total of contributions due the IPF and IMI by Defendant for work performed during the months of January 2001 through December 2003, as determined by the audit, amounts to $99,021.46.

13.     Under the terms of the Plan and Trust Agreements adopted by the IPF and IMI, interest in the amount of $42,433.35 and an additional computation of interest in the amount

4

of $42,433.35 calculated from the Due Date at the rate of 15 percent per annum have been assessed on such delinquent contributions determined due by the audit.

14.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1). Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions and dues checkoff payments in accordance with the terms and conditions of the Agreements.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.   For the total amount of $187,710.54, which is constituted as follows:

a.   For unpaid contributions in the amount of $99,021.46 payable to the IPF and IMI for the time period January 2001 through December 2003, plus any and all additional amounts found to be due and owing through the date of judgment (ERISA Section 502(g)(2)(A); General Collection Procedures of the Central Collections Unit of the Bricklayers and Allied Craftworkers ("Collection Procedures"));

b.   For interest in the amount of $42,433.35 assessed on such unpaid contributions, calculated at 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(B); Collection Procedures);

c.   For an additional computation of interest in the amount of $42,433.35, assessed on such unpaid contributions, calculated at the rate of 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(C)(i); Collection Procedures);

d.   For the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

e.   For the costs of conducting the audit in the amount of $3,472.38 (ERISA Section 502(g)(2)(D));

5

2.   In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

3.   That Defendant be directed to comply with its obligations to submit all required reports and to make all contributions and dues checkoff payments due and owing to the IPF, IMI, and/or BAC, and to pay the costs and disbursements of this action.

4.   Such other relief as this Court deems appropriate, including judgment for any contributions, dues checkoff payments, and/or interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: _Sept 27,_____, 2007

By: _____
Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO  LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Attorney for Plaintiffs

6

2285987

**EXHIBIT A**

DE 9906

2 DE

RECEIVED DEC 1 9 2000

# AGREEMENT

## 1999-2002
## LOCAL UNION NO. 2
## BRICKLAYERS & ALLIED CRAFTWORKERS
## NJ, DE, MD
## AFL-CIO

## ARTICLE I
## AGREEMENT

This Agreement is entered into this Twenty-First of September, 1999, by and between the Allied Division of the Delaware Contractors Association, Inc. (hereinafter referred to as the Association), and the International Union of Bricklayers and Allied Craft Workers, Local Union No. 2, NJ, DE and MD, (hereinafter referred to as the Union).

## ARTICLE II
## RECOGNITION

Section 1. Of the Association: All employer members of the Association who have authorized, or who subsequently authorize the Association, in writing, to act as its collective bargaining representative shall be bound by the provisions of this Agreement. The Association represents that it is duly authorized by those employers listed in Appendix A to enter into this Agreement, and to bind said members hereto as stated herein. The Union shall be notified within twenty-four (24) hours of any new employers represented by the Association who elect to be bound by the provisions of this Agreement, or of any current member who withdraws from the Association the authority to continue to act as its collective bargaining representative. No bound employer may withdraw from this Agreement before the end of its termination date. A list of employers who are bound by this Agreement on its effective date is attached hereto as Exhibit A.

Section 2. Of the Bargaining Unit: There shall be one bargaining unit for all employers bound by this Agreement for the territorial and work jurisdiction covered herein. That bargaining unit shall be the Allied Division of the Delaware Contractors Association, Inc., which shall include all present and future members and employers for whom said Association bargains or by whom it has been designated to represent.

Section 3. Of the Union: The Association recognizes the Union as the exclusive representative for all Cement Masons (hereinafter referred to as employees) performing work within the territorial and work jurisdiction of the Union and of this Agreement.

Section 4. Signed Relations: Should the Union enter into any agreement with any employer which will permit its members to be employed under conditions more favorable to the employer

DE9906

than the conditions contained herein, said more favorable conditions shall automatically become a part of this Agreement, and shall apply to all employers bound hereto.

Section 5. Waiver: No modification, variation, or waiver of any term or provision herein shall be valid unless agreed upon in writing by both the Association and the Union.

## ARTICLE III
## PURPOSE

The purpose of this Agreement is to set forth herein conditions with respect to hours of work, wages, and other conditions of employment under which employees of the employer shall work in the trade. Practices not a part of the terms and conditions of this Agreement will not be recognized. Neither the bylaws nor constitution nor trade rules of the Union shall be binding upon the employer, nor shall anything therein contained affect the right of hiring, or the wages, hours, or working conditions of said employees of the employer.

## ARTICLE IV
## LEGALITY OF AGREEMENT

Section 1. By Law: All applicable regulations, rulings, or statutes of any duly qualified governmental body or agency shall govern the provisions of this Agreement, its amendment, change, interpretation, and every other thing in relation to its operation and enforcement.

Section 2. By Voidance: Should any of the terms or provisions of this Agreement be determined to be, or held to be, in contravention of any applicable regulation, ruling, or statute of any duly qualified governmental body or agency, any such terms or provisions shall be null and void, without thereby affecting any of the other terms or conditions herein.

Section 3. Liability: All bound employers shall in good faith live up to all provisions of this Agreement. The liability of bound employers shall be several and not joint. All members of the Union shall likewise, in good faith, live up to all provisions of this Agreement.

## ARTICLE V
## TERRITORIAL JURISDICTION

This Agreement embraces New Jersey, the State of Delaware and the State of Maryland.

## ARTICLE VI
## TERM

2

DE9906

The term of this Agreement shall be from May 1, 1999 through April 30, 2000 and from year to year thereafter unless notice of change or termination is given in writing by either party to the other at least sixty days prior to such anniversary date. The nature of the changes desired shall be specified in the notice, and until a satisfactory conclusion is reached in the matter of such changes, the original provisions shall remain in full force and effect.

## ARTICLE VII
## WAGES, FUNDS, AND COLLECTION THEREOF

Section 1. Straight Time Wages: Beginning May 1, 1999 through April 30, 2000, journeyman straight time wages shall be paid at the rate of $20.05 per hour, and shall hereinafter be referred to as the base wage rate. This rate shall apply to all time worked during the straight time hours of work, Monday through Friday. Effective November 1, 1999, the total economic package will increase by $1.35 per hour. Effective May 1, 2000 the total economic package will increase by $.90 per hour. Effective May 1, 2001 the total economic package will increase by $.90 per hour.

Section 2. Fringe Benefit Option: At the option of the Union, the Association agrees that portions of the base wage rate or increases specified above may be applied to the Health and Welfare, Pension, Annuity, Apprenticeship, or Vacation Funds, or the Dues Checkoff. It shall be the responsibility of the Union to advise the Association in writing of its decision to distribute wages as permitted above at least thirty days before any such increase. At the option of the Association, the Industry Advancement Fund may be increased during the life of this Agreement. Said increases shall be from the funds of the employer, and shall in no way affect the employee base wage rate and fringes specified herein.

Section 3. Special Coatings: Employees working with epoxy, latex, masterplate, coloring of any type, monorock, four star grout, and gypsumite shall be paid 7 percent in excess of the applicable hourly base wage rate. Said premium shall be considered part of the base wage rate when it applies.

Section 4. Foremen and General Foremen:

A. The Business Agent shall be the prime contact when requests for foremen and general foremen are made. The employer shall have the right to request foremen or general foremen by name, and these men shall be sent to him, provided they are available. The superintendent of the employer shall assume all responsibility to determine when work is finished. The employer or his principal supervisor shall comply with the regular chain of command, that is, from the superintendent to the craft general foreman or foreman, when issuing an order. When a foreman is employed as a foreman by any one employer on a regular basis, meaning five days or longer, he shall be **steadily** maintained on that employer's payroll as long as there is work to be accomplished.

2-DE/99/02

3

DE9906

It is understood that these individuals receiving the foreman's premium shall, at the discretion of the employer, be required to remain on the job and assigned work to be performed as long as there is concrete related work still to be accomplished. This provision is applicable to only one foreman or general foreman being employed by a construction firm. When the employer requests a specific foreman, said foreman shall be paid at the foreman's rate from the day of hire.

B. When two or more employees are employed on any one job, one of the two or more shall be designated as a foreman, shall be paid $1.05 per hour in excess of the base wage rate, and shall be paid at the appropriate rate on overtime work. Said premium shall be considered part of the base wage rate when it applies.

C. Foremen shall work with their tools until the number of employees on the job reaches eight including himself. Foremen shall then stop working.

D. Foremen shall not have charge of more than twelve employees, or a fraction thereof. After twelve men, there shall be a deputy foreman, and the first foreman on the job shall become a general foreman. General foremen shall be paid $1.25 per hour in excess of the base wage rate, and shall be paid at the appropriate rate on overtime work. Said premium shall be considered part of the base wage rate when it applies.

Section 5. Health and Welfare Fund: In addition to the base wage rate, the employer agrees to contribute to the Health and Welfare Fund        for each hour worked by his employees who are working under this Agreement, whether or not such employees are members of Local 2. In calculating contributions, all fractions of hours shall be paid for as full hours. Overtime hours shall be paid at the straight time rate of       . The Fund shall be administered as a Trust, and both the Association and the Union shall be represented by an equal number of trustees. Employers bound by this Agreement are also bound by any rules or regulations contained in the Trust Agreement governing this Fund, provided that such Trust Agreement, rules, and regulations shall not be inconsistent with this Agreement. Payments are to be made in accordance with Article VII, Section 11. At the time of this Agreement, the Health and Welfare Fund is inactive. It may, however, be reinitiated during the term of this Agreement with the consent of both negotiating parties.

Section 6. Annuity Fund: In addition to the base wage rate, the employer agrees to contribute to the Annuity Fund $3.30 for each hour worked by his employees who are working under this Agreement, whether or not such employees are members of Local 2. In calculating contributions, all fractions of hours shall be paid for as full hours. Overtime hours shall be paid at the straight time rate of $3.30. The Fund shall be administered as a Trust, and both the Association and the Union shall be represented by an equal number of trustees. Employers bound by this Agreement are also bound by any rules or regulations contained in the Trust Agreement governing this Fund, provided that such Trust Agreement, rules, and regulations shall not be inconsistent with this Agreement. Payments are to be made in accordance with Article VII, Section 11.

4

DE9906

Section 7. Local Pension Fund: In addition to the base rate, the employer agrees to contribute to the Local Pension Fund $3.05 for each hour worked by his employees who are working under this Agreement, whether or not such employees are members of Local 2. In calculating contributions, all fractions of hours shall be paid as full hours. Overtime hours shall be paid at the straight time rate of $3.05. The Fund shall be administered as a Trust and both the Association and the Union shall be represented by an equal number of Trustees. Employers bund by any rules or regulations contained in the Trust Agreement governing this Fund, provided that such Trust Agreement, rules and regulations shall not be inconsistent with the Agreement. Payments are to be made in accordance with Article VII, Section 11.

Section 8. Bricklayer and Trowel Trades International Pension Fund: In addition to the base rate, the employer agrees to contribute to the Bricklayer and Trowel Trades International Pension Fund $1.50 for each hour worked by his employees who are working under this Agreement, whether or not such employees are members of Local 2. In calculating contributions, all fractions of hours shall be paid as full hours. Overtime hours shall be paid at the straight time rate of $1.50. The Fund shall be administered as a Trust and both the Association and the Union shall be represented by an equal number of Trustees. Employers bound by this Agreement are also bound by any rules or regulations contained in the Trust Agreement governing this Fund, provided that such Trust Agreement, rules and regulations shall not be inconsistent with the Agreement. Payments are to be made in accordance with Article VII, Section 11. The payments required there shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust, Dated 1 July 1972.

Section 9. Dues Checkoff: The employer agrees to deduct from the employees' gross base wages for Union membership dues six percent of gross base wages of every employee who is working under this Agreement, and who has signed and delivered to the employer the proper legal authorization for such deductions. Payments are to be made in accordance with Article VII, Section 11.

Section 10. Industry Advancement Fund: From his own funds, the employer agrees to contribute to an Industry Advancement Fund eight-tenths of one percent (.8%) of the total wages and contributory fringes paid for each hour worked by his employees who are working under this Agreement, whether or not such employees are members of Local 2. In calculating contributions, all fractions of hours shall be paid for as full hours. Overtime hours shall be paid at the straight time rate. The Fund shall be administered for purposes and under conditions as set out in a separate Employer Trust Agreement governing said Fund. Employers bound by this Agreement are also bound by any rules or regulations contained in the Trust Agreement governing the Fund. Payments shall be made in accordance with Article VII, Section 11. At the option of the Association, the Industry Advancement Fund may be increased during the life of this Agreement. Said increase shall be from the funds of the employer, and shall in no way affect the employee base rate and fringes specified herein.

2-DE/99/02                              5

DE906

Section 11. Payments:

A. All reports and Fund payments required in Article VII are due by the fifteenth day of the month following the period covered by such reports, and shall be accompanied by a common form to be supplied by Local 2. The cost of printing this form shall be borne proportionately by the appropriate Funds. Said form shall contain such information concerning the details of the payments and hours worked by covered employees as is necessary for the sound administration and operation of all Funds contained herein. A copy of said common form shall be sent with payment due to each Fund administrator. Reports and payments received in the office of the appropriate Fund Administrator after the fifteenth day of the month following the period covered are delinquent and shall be subject to liquidated damages of ten percent of the amount due to each Fund (minimum of $10.00). When an employer initially becomes delinquent, and should the employer continue delinquent in his reports and payments to the Funds as mentioned herein, the Union shall have the right to withhold employees covered by this Agreement from the employer, and the employer shall nevertheless, be obliged to continue the employees' wages and fringes at the straight time base wage rate until such time as the delinquent reports and payments have been made in accordance with the above provisions, the no-strike clause of this Agreement notwithstanding, except:

1. No employee shall be withheld from an employer under this Section where the employer has posted a bond and/or deposited cash to secure his obligations to make reports and payments to the Funds as herein mentioned; provided so long as the amount of the bond so posted and/or cash deposited as security is sufficient to satisfy all arrearages, debts, deficits, and liquidated damages due the Funds by the said employer plus interest at the rate of six percent per annum on said unpaid arrearages, debts, deficits, and liquidated damages; and,

2. No employee shall be withheld from an employer under this Section until (1) the administrator of the Fund(s) shall have first communicated by certified or registered mail with said employer apprising him of the delinquency or arrearages, and (2) in the event that the said employer fails to satisfy all his obligations to the Fund(s) after receiving notification from the office of the administrator, the administrator of the Fund(s) shall contact the employer and make arrangements for the immediate payment of all monies due the Fund(s). Copies of the delinquency notification shall be sent by the appropriate administrator to the Union and the Association at the same time said notice is sent to the delinquent employer. In the event that the delinquent employer shall not have satisfied his total obligations to the Fund(s) within three working days following receipt of his delinquency notice from the office of the administrator of the Fund(s) as herein provided, the Union shall have the right to withhold its employees as is more fully set forth herein, and in such event the Union shall not be requested to invoke or resort to the arbitration procedure specified in this Agreement.

B. Any employer who has been delinquent as defined herein to any Fund(s) specified herein for two consecutive months shall make payments as specified herein to all Funds contained

6

DE9906

herein on a weekly basis until such time as the trustees and/or administrator of said Fund(s) are satisfied that said employer can and will make said payments on a monthly basis without again becoming delinquent. All regulations and rules contained herein, including liquidated damages, strike provisions, and other enforcement action which would ordinarily apply to monthly payments shall apply to an employer who must pay weekly.

C. In the event that the trustees or administrator of any Funds herein deem same desirable, they shall have the right to request within ten days from receipt of written notice a certified audit of the employer's payroll records in question covering employees working under this Agreement. Should the initiation of enforcement action be required to collect arrearages, debts, deficits, and liquidated damages as specified herein, the delinquent employer shall also be responsible for paying any such collection expenses, including, but not limited to, attorney and accountant fees incurred by the trustees, even though no legal actions are actually instituted.

## ARTICLE VIII
## HOURS OF WORK, OVERTIME, AND PAYMENT OF WAGES

Section 1. Work Week: The work week shall commence at 12:01 A.M. Monday and end at 12:00 midnight the following Sunday.

Section 2. Daily Straight Time Hours of Work: Eight hours shall constitute a day's work, and such shall be made between 8:00 A.M., and 4:30 P.M. Monday through Friday, unless a different agreement is reached between the employer and the Union. Employees shall be at their place of work at the starting time and shall remain at their place of work until quitting time. There shall be no changing of clothes or other preparation for beginning or quitting work either after said starting time or before said quitting time. All time limits in the work day shall be strictly enforced by the general foreman or foreman on the job as specified in Article VII, Section 4A herein. When there is no general foreman or foreman on the job, it shall be the responsibility of the employer or his principal supervisor on the job to enforce these rules. The work day shall be interrupted by a meal period of one-half hour which shall begin four hours after the straight time hours of work begin on a given day, that is from 12:00 Noon to 12:30 P.M., unless a different agreement is reached between the employer and the Union. Straight time hours shall not exceed eight in any one day or forty in any one week.

Section 3. Call For Men: When an employee is directed to report for work to a job or to the employer's shop, whichever he has been sent to by the employer, and he is not directed to start work by the employer due to weather conditions, he shall receive one hour reporting pay. However, there shall be no reporting pay if the employer cancels the call for men by notifying the foreman prior to 7:00 A.M. of the morning in question. The employer shall have sole responsibility to determine the availability of work due to weather conditions. When the conditions

2-DE/99/02                                    7

DE9906

set forth herein occur on an overtime or shift work day, the overtime or shift work rate shall be paid. When an employee is hired at the request of the employer through the Business Agent between the hours of 8:00 A.M. and 4:30 P.M. on any working day, that employee shall receive a minimum of eight hours' pay for that day.

Section 4. Coffee Break: A coffee break shall be allowed on the job between the hours of 9:30 A.M. and 10:00 A.M. each day. Employees shall furnish their own coffee, and shall not be allowed to leave their station of work to purchase coffee. Employees shall be permitted fifteen minutes time to drink coffee at their station of work. When reasonable circumstances require same, the foreman shall designate one man on the job to purchase coffee for all employees on the job.

Section 5. Holidays and Sundays: The following holidays shall be observed, and when work is performed thereon, or on Sundays, it shall be paid for at twice the base wage rate: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. There shall be no work performed on Labor Day except to protect or save life or property. Holidays specified in this Section shall be celebrated in accordance with the Federal Monday Holiday Act, PL 90-363, Section 6103, and Title I, Chapter 5, Section 501 of the Delaware Code. (Holidays falling on Saturday shall be observed on the preceding Friday, and holidays falling on Sunday shall be observed on the following Monday.) In the event that the Building and Construction Trades Council of Delaware should by majority vote declare general election day as it biennially occurs as a non-working holiday for the building and construction trades, said declaration shall be binding on the Association and the Union. In that event the Association agrees that employers bound hereto will not work on that day except on emergency type jobs. In such event, only those employees who actually do work on that day on emergency type jobs shall be paid, said payment to be at the straight time base wage rate for the regular straight time hours of work. Overtime work shall be paid as per Section 6 below.

Section 6. Overtime: It is agreed that overtime is undesirable and not in the best interests of the industry or the employees. Therefore, except in unusual circumstances, overtime shall not be worked. When unusual circumstances demand overtime, such overtime shall be kept at a minimum. The first two hours of overtime and the first ten hours on Saturday shall be paid at the rate of one and one-half times the base wage rate. All hours worked on Sundays, holidays or in excess of ten hours per day shall be paid at twice the base wage rate. On any continuous work overtime lasting more than one and one-half hours beyond a work shift a meal period of up to one hour, job conditions permitting and at the discretion of the foreman, shall be given with pay, at the overtime rate, and an additional half-hour meal period with pay shall be given every four hours worked thereafter commencing at the end of the last meal period, providing the overtime work continues after the time each meal period is due. The employer shall permit employees working on non-scheduled overtime a reasonable arrangement to obtain food. Employees may remain on the job beyond normal working hours on any given day until their work is finished. Under no

8

DE9906

circumstances can an employee covered herein be sent home and be instructed to return to work at the employer's leisure.

Section 7. Shift Work: If the employer so elects, he may work either two or three shifts in a twenty-four hour period. When the employer assigns employees to shift work, he shall work them five same shift periods, excluding Saturday and Sunday, or he shall pay them five shift periods. All shift work shall be between midnight Sunday and midnight Friday. When two shifts are employed, the fist shift shall be from 12:00 midnight to 12:00 noon. The first eight hours shall be paid at the straight time base wage rate. The last three and one-half hours shall be paid at one and one-half times the base wage rate. The meal periods shall be from 4:00 A.M. to 4:30 A.M., and from 8:30 A.M. to 9:00 A.M., unless otherwise agreed upon between the employer and the business agent. The second shift shall be from 12:00 noon to 12:00 midnight. The first eight hours shall be paid at the straight time base wage rate. The last three and one-half hours shall be paid at one and one-half times the base wage rate. The meal periods shall be from 4:00 P.M. to 4:30 P.M., and from 8:30 P.M. to 9:00 P.M., unless otherwise agreed upon between the employer and the business agent. When three shifts are employed, the first shift shall begin at midnight, shall work six and one-half hours, and shall receive eight hours' pay. The second shift shall be the regular straight time hours of work from 8:00 A.M. to 4:30 P.M., shall work eight hours, and shall receive eight hours' pay. The third shift shall be from 4:30 P.M. to 12:00 midnight, shall work seven hours, and shall receive eight hours' pay.

Shift work performed on holidays specified herein, Saturdays, Sundays, beyond the regular shift hours, or during the meal period shall be paid for at the overtime rate as specified in Section 6 above at all times. There shall be a half hour meal period without pay on each shift. Employees required to work through lunch shall be allowed one half hour with pay later in the day to eat, job conditions permitting. Shift arrangements other than the aforementioned shall be agreed upon between the employer and the Union.

Section 8. Wage Payments: An itemized statement of hours worked, wages earned, and tax and other deductions made shall accompany the net wages paid. All deductions shall be listed separately. The employer may withhold five days' pay in order to make up the payroll. Employees shall be paid no later than 12:00 Noon on the regular pay day on the job. All wage and fringe payments shall be by check, except when the Union has cause to doubt the financial responsibility of the employer. In all such cases, wage and fringe payments shall be in cash. When payment is by check, the steward or another employee on the job shall be given ample time to cash the checks for the employees on the job. When payment is in cash, gross base pay less deductions shall be given to the employees, and all deductions and fringe contributions – with the appropriate reporting forms filled out – shall be delivered on the pay day specified herein to the Union Business Agent. When, through no fault of their own employees are not paid by 12:00 Noon on the regular pay day, or when laid off or discharged, they shall be paid waiting time until paid, at the straight time base wage rate, except when the delay is for reasons beyond the employer's control. Such waiting time shall not exceed four hours. Employees who quit on their own accord shall wait to be paid

2-DE/99/02                                      9

D8990b

until the next regular pay day. Any fraction of an hour worked less than a half hour shall be paid to the nearest half hour. Any fraction of an hour worked over a half hour shall be paid to the nearest hour. Should a regular pay day fall on a Holiday recognized in Section 5 herein, employees shall receive their pay on the last work day before the Holiday. Employees who have been employed by an employer for at least five working days, and who have not received pay in that period of time, shall, upon request to their foreman, receive some or all money due them up to the close of the previous work day. This possible exception to the five-day withholding period shall apply to the first five working days of employment only, and shall not continue throughout an employee's entire duration of employment with an individual employer.

Section 9. Bonding. All employers who are not members of the Association shall be bonded in amount sufficient to cover the maximum weekly payroll for the duration of the job, or for a minimum period of one month, whichever is lesser. Non-members shall also be bonded to cover maximum fringe payments for the duration of the job, or for a minimum period of two months, whichever is lesser. The Union shall have the right to require proof of bond coverage. Any employer who has at any time during the term of this Agreement been delinquent for two consecutive months in his payments of contributions and/or deductions for any of the Funds contained herein shall be required, upon notification by the appropriate trustees or legitimate agent thereof, to procure a bond in an amount to be determined by said trustees or agent insuring the payment of said contributions and/or deductions for said Funds. If such bond cannot be procured, a cash bond in like amount shall be substituted.

## ARTICLE IX
## WORKING CONDITIONS

Section 1. Discrimination: Neither the employer nor the Union shall discriminate against employees, or applicants for employment, for reasons of age, color, creed, national origin, race, sex, union membership, or lack of union membership. The Union shall recognize and participate in the Delaware Plan.

Section 2. Drinking Water: The employer shall furnish suitable drinking water in vessels with faucet and individual paper drinking cups for employees working under this Agreement. Ice shall be furnished between May 1 and November 1.

Section 3. Layoff and Discharge: When an employee is laid off, he shall be notified by 3:30 P.M., and shall receive his pay by 3:30 P.M. Should overtime work by required on the day of layoff, an employee shall receive all pay due him up to 4:30 P.M. of that day. All overtime pay past 4:30 P.M. of that day shall be mailed to the employee the next working day. When an employee is discharged, he shall be paid immediately.

Section 4. Manpower Supply: The Union shall furnish qualified employees to bound employers anywhere in the territorial jurisdiction of the Union upon receipt of reasonable (twenty-

DE9906

four hours) notice from the employer (Saturdays, Sundays, and holidays excluded). When the Union does not comply with the employer's request for men, the employer shall be free to obtain qualified workmen from any available source. When the employer does not comply with the notice requirement for workers, the members of the Local designated by the Union shall be reimbursed for all work performed. Members of the Association shall not be bound to this reimbursement provision.

Section 5. Production Limit: There shall be neither a limit on production by employees nor any restriction on the full use of tools or equipment. There shall be no restriction, other than may be required by safety regulations, on the number of employees assigned to any crew or to any service. Such decisions rest with the employer and the foreman on the job.

Section 6. Safety: Employees covered herein shall at all times while in the employ of the employer be bound by the safety rules and regulations as established by the employer in accordance with the Construction Safety Act and OSHA. When Cement Masons are working in an area where asbestos is being removed, they will be informed of the situation and all applicable OSHA provisions will be adhered to.

Section 7. Tools: Employees shall furnish and carry all standard hand tools pertinent to their trade. Such standard tools include: hand floats (wood or magnesium), hand trowels (14 inches), edger no. 212, hammer (chipping or brick), chisel, rubber float, brush, and mason trowel. Special tools, including ball floats, darbies, good straight edges, and knee boards shall be furnished by the employer.

The employer shall reimburse an employee for the loss of tools and clothing when such loss is sustained as a result of theft from the tool room, or through destruction of the tool room. Proof of storage and loss shall be such as to satisfy the employer's or property owner's insurance requirement before the employer shall be required to reimburse an employee as aforesaid. When weather warrants the employer shall furnish rain gear, rubber boots, and rubber gloves. The foreman shall be responsible for the return of these items to the employer. Boots ripped on the job site by wire, rods or rakes shall be replaced by the employer provided the incident is immediately reported to the supervisor on the job site.

Section 8. Tool Shed and Change House: On large jobs employers shall furnish a suitable, lighted, and weather-proof change house or separate space in an existing structure, properly locked, for employees covered herein only, for the changing of clothes. Tool storage shall be in a locked area separate from the change room. On short jobs when it is not feasible to provide a change house as provided herein, a gang box with lock shall be provided within close proximity to the job site for employees covered herein only. Heat shall be furnished between November 1 and May 1. Clean lavatories shall also be provided by the employer whenever practicable.

Section 9. Transportation: There shall be no parking, subsistence, or travel expense paid

2-DE/99/02                    11

DE9906

to any employee for work to be performed within the territorial jurisdiction of the Union. An employee sent to work beyond the territorial jurisdiction of this Agreement shall receive transportation expenses and allowance for time to travel at the current hourly rate of pay. When an employee is required to remain away from his home overnight on specific assignment by the employer, and when said employee actually does board, reasonable hotel or motel and meal expenses shall be paid by the employer when furnished with proper receipts. When an employee is required to travel from job to job during working hours, transportation from one job to the other shall be furnished by the employer, and the employee shall be returned to the original job by quitting time.

Section 10. Work Injury: When an employee is injured in a shop or on the job, the employer shall take charge of the employee and see that he is given first aid. If seriously injured, the employer shall accompany the employee to the hospital or his home, or shall appoint someone to accompany him. The employee shall receive a full day's pay on the day of the injury when lost time is spent in medical treatment.

Section 11. Working with Epoxy: When an employee is required to work with epoxies, latex, masterplate, coloring of any type, monorock, four star grout, or gypsumite, the employer shall provide all brushes, fresh air masks, galoshes, gloves, knee-pads, protective clothing, and tools. All areas to be worked shall be adequately ventilated. Standard bonding agents such as Duraweld and Weldcrete shall not be considered in the category of epoxies.

Section 12. Work of Cement Masons: All concrete shall require a Cement Mason regardless of the grade (rough or finished).

Section 13. Work Jurisdiction: All work not covered or described herein, but traditionally or normally done by employees covered herein, shall continue to be assigned to the employees as if actually set forth herein.

Section 14. Work Orders: At no time shall an employer or his representative assign work which rightfully belongs to the Cement Masons to other trades. This includes any makeshift act committed with the intent of taking work from the Cement Masons.

## ARTICLE X
## RIGHTS AND OBLIGATIONS

Section 1. Business Agent: The Union Business Agent shall have access to all jobs over which the employer exercises control of entry. The Business Agent shall be the prime contact for hiring all cement masons.

Section 2. Steward: The first employee other than a foreman on a job shall act as a steward until a permanent steward has been appointed. The Business Agent shall appoint and remove all

DE9906

stewards. The steward shall be a qualified workman, shall perform work assigned to him by the employer, and shall exercise no supervisory functions. There shall be no non-working stewards. The steward shall not be discharged or discriminated against for the faithful performance of his Union duties, and shall be removed by the Union when it is agreed between the employer and the Union that the steward failed to perform his duties in the interest of both the employer and the Union. Provided the steward is qualified to perform the work remaining, the steward shall be the last man, other than the foreman, to be terminated from the job. Except when a job ends, the Union shall receive twenty-four hour notice prior to the steward's termination.

## ARTICLE XI
## UNION SHOP CLAUSE

The employer shall have the right to secure and choose any person as a new employee from any source. It is agreed that such an employee who, by nature of his work comes within the provisions of this Agreement, and who shall have worked for the employer for not less than seven days, and who is a qualified Cement Mason according to Union standards, shall be required to become and remain a member of the Union in good standing. The Union shall make membership therein continuously available to such employee on the same terms and conditions as are generally applicable to the other members of the Union. In interpreting good standing, an employer shall not discharge any employee for non-membership in the Union if the employer has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or that membership was denied or terminated for reasons other than the failure of the employee to tender the initiation fee and/or periodic dues uniformly required as a condition of acquiring or retaining membership.

In any case where the Union requests the discharge of an employee pursuant to this Article, the Union shall, upon request, provide for the employer information substantiating that said offending employee has failed to comply with the membership requirements of this Article. If the Union shall notify an employer in writing of the failure of any employee to maintain such employee's membership in the Union in good standing, as defined above, and if the Union in such written notice shall request that the employer discharge the employee in question for such failure, that employer shall then discharge such employee.

## ARTICLE XII
## DISPUTES AND PROCEDURES

Section 1. Jurisdictional Disputes: It is agreed between the parties hereto that this Agreement is applicable to construction work that is primarily within the recognized and traditional jurisdiction of the Union, and said work shall be performed in accordance with the terms of this Agreement. It is further agreed that should an employer bound hereto be required to perform construction work that is within the recognized and traditional jurisdiction of another union, or which work is claimed by another union, then work assignments shall be made in

DE9906

accordance with and shall be subject to agreements and decisions of record recognized by the Building Trades Department, AFL-CIO, established trade practice, or prevailing area practice with due regard, however, to the efficiency and economy of operations. If the Union is still aggrieved over any assignment after discussion between the employer and the Business Agent(s) of the Union(s) involved, an attempt shall be made to settle the dispute by discussion between the Business Agent(s) of the Union(s) involved and the Director Labor Relations of the Association. If such discussion does not result in a prompt settlement of the dispute, the matter shall then be referred to the general presidents of the respective contesting Unions and the Association in an effort to resolve the matter. If the matter is not resolved in this manner, the parties involved may then agree to select an impartial third party as provided in Section 2 below, or pursue the matter through the procedures of the National Labor Relations Board. Pending an orderly resolution of the matter, there shall be no interruption of work by a work stoppage, strike, or refusal to refer men to the project by the Union.

Section 2. Non-Jurisdictional Disputes and Grievances: The following shall be the procedure to be followed with respect to all disputes of any nature whatsoever (except jurisdictional disputes as provided in Section 1 above and except any disputes arising under Article VI above) which may arise between the parties hereto or their individual members involving the interpretation or application of this Agreement during its term:

A. If the dispute affects, or arises on, a particular job or operation, an attempt shall be made to settle it by discussion between the foreman and/or the superintendent on the job or operation, and the steward on the job or operation and/or the Union's Business Agent.

B. If the discussion provided for in paragraph (A) above is not held, or if it does not result in a prompt settlement of the dispute, an attempt shall be made to settle the dispute by discussion between the employer and the Business Agent of the Union.

C. If the discussion provided for in paragraph (B) above does not result in a prompt settlement of the dispute, or if the dispute affects or involves more than one job or operation, an attempt shall be made to settle the dispute by discussion between the Business Agent of the Union and the Director of Labor Relations of the Association. If such discussion does not result in a prompt settlement of the dispute, and either the Association or the Union desires further action respecting such dispute, such further actions shall be arbitrated in the manner hereinafter set forth.

D. The Association or the Union, whichever decides that there shall be further action on the dispute, shall notify the other in writing by registered mail of its intention to submit the dispute to arbitration, and shall, simultaneously, file with the American Arbitration Association a written demand for arbitration of said dispute, whereupon an arbitrator shall be appointed in accordance with the then prevailing rules of the Labor Arbitration Tribunal of said American Arbitration Association, except that if the parties hereto fail to agree upon any of the persons named in the first list submitted by the American Arbitration Association to the parties, or if those named in said list decline or are unable to act, and if for any reason the appointment cannot be made from

14

DE9906

such first submitted list, the American Arbitration Association shall send a second list of names of persons chosen from its Panels, and thereafter proceed in accordance with its rules aforesaid. The arbitrator thus appointed shall hold hearings as promptly as possible, and shall render his award in writing. Such award shall be final and binding upon the Association and the Union, and upon their respective principals or members. In considering his award, the arbitrator shall not modify, detract from, or alter the provisions of this Agreement. The arbitrator's fees and expenses, and the fees of the American Arbitration Association, shall be shared equally by the Association and the Union. The arbitrator shall render a decision no later than forty-eight hours after completion of the hearing on the dispute in question; provided, however, that the parties hereto may jointly authorize the arbitrator to extend the time for reaching a decision. No disagreement, dispute, or question, shall result in any slowdown, stoppage, strike, abandonment or lockout, pending the completion of all procedures including arbitration, provided for in this Article.

Section 3. Strikes and Lockouts: It is agreed that there shall be no slowdowns, strikes, or work stoppages of any character whatsoever by the Union or its members, either individually or collectively, and that there shall be no lockouts by the Association during the term of this Agreement. This provision shall not apply, however, should either party hereto refuse to submit any matter to arbitration as provided for herein, or to abide by the decision of the arbitrator; when an employer has not paid employees' wages in full and on time as specified herein; or when the Union has been advised by the administrator of any Fund specified herein that an employer is delinquent as specified herein.

# ARTICLE XIII
## APPRENTICES AND TRAINEES

Section 1. Apprentices: Recognizing the need to maintain continuing support of apprenticeship and similar training programs in the construction industry, the employer shall, to the extent permitted by job conditions, employ apprentices to perform work which is performed by the Union and which is within his capability. All apprentices shall come under the jurisdiction of Local No. 699-DE and the Joint Apprenticeship Committee, and shall abide by the apprenticeship standards of said Committee. All Apprentices shall work under the supervision of working journeymen. Both the Association and the Union shall have an equal number of representatives on the Joint Apprenticeship Committee. Apprentice compensation shall be set by the Joint Apprenticeship Committee. The Joint Apprenticeship Committee shall establish the apprentice wage rates and apprentice/journeyman ratio. Once established such wage rates and ratios shall be incorporated herein.

2-DE/99/02                    15

DE9906

**IN WITNESS HEREOF,** the said Association has caused its name by John J. McMahon, Jr., its Director of Labor Relations, to be hereunto set, and the common and corporate seal of said Corporation to be hereunto affixed, and the said Bricklayers and Allied Craftsmen Union, Local No. 2 - DE, AFL-CIO, has caused its name by Ted Henderson, its Business Manager, to be hereunto set, and the common seal of the said Union to be hereunto affixed, duly attested by Thomas F. Rhoades, its Business Agent, the day and year first above written.

**ALLIED DIVISION**
**DELAWARE CONTRACTORS**
**ASSOCIATION, INC.**

By _____ /s
    John J. McMahon, Jr.
    **Executive Vice President**

**BRICKLAYERS AND**
**ALLIED CRAFTSMEN**
**UNION, LOCAL NO. 2 - DE**

By _____ /s
    Ted Henderson
    Business Manager

By _____ /s
    Thomas F. Rhoades
    **Business Agent**

16

ARCHITECTURAL REST INC
289705 0002 DE 75

_10/11/00_

DATED

FULL OFFICIAL NAME OF EMPLOYER.

ARCHITECTURAL RESTORATIONS
315 SWERT HOLLOW RD.
MILFORD NJ 08848 INC.

CONTRACTOR'S ADDRESS

COMPANY S.S.NO.

_22-3278052_

My/Our Workmen's Compensation

Insurance No _34290_

_SELECTIVE INSURANCE_

TITLE·

Telephone NO.

_(908) 995-4945_

SIGNATURE

Co-OWNER

TITLE OR SIGNATURE FOR EMPLOYER

ARCHITECTURAL
RESTORATIONS
AND WATERPROFING INC

Page Two of Two

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JOHN FLYNN, et al. | ARCHITECTURAL RESTORATIONS AND WATERPROOFING, INC. |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___11001___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ira R. Mitzner (202)420-2200
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

● 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

ERISA - Complaint filed for recovery of delinquent contributions - 29 U.S.C. Sections 1002, 1132, 1145

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ [_____]   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  9/27/07   SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed _only_ if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the _primary_ cause of action found in your complaint. You may select only _one_ category. You _must_ also select _one_ corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.